**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **ALSI HOLDINGS, LLC,** | |
| Plaintiff | **JURY TRIAL DEMANDED** |
| v. | **CASE No. 6:21-cv-01187-ADA** |
| **CURRENT LIGHTING SOLUTIONS, LLC, d/b/a GE CURRENT, A DAINTREE COMPANY,** | |
| **HLI SOLUTIONS, INC., f/k/a HUBBELL LIGHTING, Inc, both d/b/a HUBBELL CONTROL SOLUTIONS and/or CURRENT,** | |
| Defendants. | |

**PLAINTIFF ALSI HOLDINGS, LLC'S
<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  DISPUTED TERMS ........................................................................................... 1

    A.   U.S. Patent No. 8,322,881 ("the '881 Patent") ...................................... 1

        1.   "a pair of integral multi-faceted side walls that extend from opposite sides of the base member at an angle," Claim 1 ........................................ 1

    B.   U.S. Patent No. 9,699,854 ("the '854 Patent") ...................................... 2

        1.   "the first and second multi-faceted side walls extend away from the lighting strip at an angle," Claim 1 ............................................................ 2

            i.   Claim language ............................................................................ 2

            ii.   Claim differentiation ................................................................. 4

            iii.   Specification .............................................................................. 7

            iv.   Extrinsic evidence ................................................................... 10

    C.   U.S. Patent No. 8,721,114 ("the '114 Patent") .................................... 11

        1.   "a first [second] reflector extending from the central body adjacent to the first [second] group of LEDs for directing light from the first [second] group of LEDs in the illumination direction," Claim 1 ........................... 11

            i.   Specification ............................................................................. 11

            ii.   Prosecution history .................................................................. 13

    D.   U.S. Patent No. 9,049,753 ("the '753 Patent") .................................... 15

        1.   "monitor for monitoring an operational characteristic of a light source comprised in the light fixture", Claim 1 .................................................. 15

            i.   The claim does not use "means for" and is presumed not to invoke 35 U.S.C. § 112 ¶ 6. ..................................................................... 15

            ii.   The intrinsic evidence confirms that the term "monitor" has a structural meaning. ................................................................... 16

            iii.   The claim is not indefinite. ...................................................... 20

        2.   "a communication component positioned between the power supply device and the light source," Claim 1 ...................................................... 21

III. CONCLUSION ................................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*01 Communique Lab'y, Inc. v. LogMeIn*, Inc.,
   687 F.3d 1292 (Fed. Cir. 2012)............................................................................... 3, 4

*Ancora Techs., Inc. v. LG Elecs. Inc.*,
   No. 1-20-CV-00034-ADA, 2020 WL 4825716 (W.D. Tex. Aug. 19, 2020)..................... 12, 13

*Avid Tech., Inc. v. Harmonic, Inc.*,
   812 F.3d 1040 (Fed. Cir. 2016 ...................................................................................... 14

*CAO Lighting, Inc. v. Gen. Elec. Co., Consumer Lighting (U.S), LLC*,
   No. CV 20-681 (MN), 2022 WL 1477515 (D. Del. May 10, 2022) ........................................... 9

*CAO Lighting, Inc. v. Light Efficient Design*,
   No. 17 C 7359, 2019 WL 1468139 (N.D. Ill. Apr. 3, 2019) ...................................................... 14

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002) ....................................................................................... 1

*Cont'l Cirs. LLC v. Intel Corp.*,
   915 F.3d 788 (Fed. Cir. 2019) ............................................................................... 7, 11

*Cordis Corp. v. Medtronic AVE*, Inc.,
   339 F.3d 1352 (Fed.Cir.2003) ........................................................................................ 14

*Dyfan, LLC v. Target Corp.*,
   28 F.4th 1360 (Fed. Cir. 2022) ......................................................................................... 15

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
   29 F.4th 1365 (Fed. Cir. 2022) ...................................................................................... 14

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014) ....................................................................................... 22

*Honeywell Int'l, Inc. v. Nikon Corp.*,
   589 F. Supp. 2d 433 (D. Del. 2008) .................................................................................. 8

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004) ................................................................................ 1, 9, 12

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009) ....................................................................................... 10

*Laryngeal Mask Co. v. Ambu*,
   618 F.3d 1367 (Fed. Cir. 2010) ....................................................................................... 10

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ................................................................................. 4

*Micro Chem. Inc. v. Great Plains Chem. Co.*,
   194 F.3d 1250 (Fed. Cir. 1999) ............................................................................. 21

*Omega Eng'g, Inc, v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ............................................................................. 13

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................ 5, 9, 12, 14

*Thorner v. Sony Computer Ent. Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ......................................................... 7, 9, 12, 13, 22

*Tyco Fire Prod. LP v. Reliable Automatic Sprinkler Co.*,
   No. 10-cv-3446, 2011 WL 1884013 (E.D. Pa. May 17, 2011) ....................... 4, 10, 12

*Verint Sys. v. Red Box Recorders, Ltd.*,
   166 F. Supp. 3d 364, 381-383 (S.D.N.Y. 2016) ....................................................... 18

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
   No. 2:17-CV-456, 2018 WL 3239714 (E.D. Tex. July 3, 2018) .............................. 3, 9

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015) ............................................................... 16, 20, 21

**Statutes**

35 U.S.C. § 112 ............................................................................................... 15, 16

## I.    INTRODUCTION

The inventions in this case are directed to LED lighting fixtures for commercial and industrial use. For *Markman* purposes, the claim terms in dispute focus on reflector designs and devices that monitor operational characteristics of the claimed LED fixtures.

"[A] claim construction analysis must begin and remain centered on the claim language itself." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1116 (Fed. Cir. 2004). There is a "heavy presumption" that a claim term has its "ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002). ALSI's proposed constructions adhere to these principles.

The terms Defendants seek to construe are terms readily understood by a person of ordinary skill in the art and easy for jurors to understand. In their briefing, Defendants fly away from the plain claim language in an attempt to rewrite and narrow the claims in a way that the intrinsic record and Federal Circuit precedent do not contemplate. Defendants' overly narrow constructions violate bedrock claim construction principles, including those against (1) importing embodiments from the specification and excluding disclosed embodiments, and (2) departing from the plain and ordinary meaning only if there is a "clear and unmistakable" disclaimer of claim scope in the specification or the prosecution history. ALSI Holdings, LLC ("ALSI") requests that the Court reject Defendants' narrow proposals and construe the terms based on their plain and ordinary meaning.

## II.    DISPUTED TERMS

### A.    U.S. Patent No. 8,322,881 ("the '881 Patent")

1. **"a pair of integral multi-faceted side walls that extend from opposite sides of the base member at an angle," Claim 1**

1

| ALSI'S Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary<br><br>Plain and ordinary meaning | "a pair of integral multi-faceted side walls that extend from opposite sides of the base member at ***the same*** angle" (emphasis added) |

**B.      U.S. Patent No. 9,699,854 ("the '854 Patent")**

     **1.      "the first and second multi-faceted side walls extend away from the lighting strip at an angle," Claim 1**

| ALSI'S Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary<br><br>Plain and ordinary meaning | "the first and second multi-faceted side walls extend away from the lighting strip at ***the same*** angle" (emphasis added) |

For each of the '881 and '854 Patents, the above claim phrases are clear on their face, and no construction is necessary. Contrary to Defendants' position, there is no requirement that each side wall of the claimed reflector/reflector sheet forms the "same angle" with the underlying base member/lighting strip. *See* DN 54 ("Def. Br.") at 6. The claims, the specification, and extrinsic evidence suggest a far less limiting construction.

     **i.      *Claim language***

Defendants suggest that because the claims refer to each side wall's angle with the base as "an angle," the two angles must be the same angle. *See* Def. Br. at 7. But nothing in the plain language of the claims (reproduced in the table below) indicates that the patentee intended each side wall to form the same angle with the base:

2

| Claim 1 of the '881 Patent | Claim 1 of the '854 Patent |
|---|---|
| 1. A light emitting diode (LED) lighting arrangement for a lighting fixture, comprising:<br><br>a lighting strip comprising a plurality of light emitting diodes (LEDs) each having a light emitting portion; and<br>a reflector formed from a substantially planar sheet of material that is bent to form a substantially planar base member that extends an entire length of the lighting strip and ***at least a pair of integral multi-faceted side walls that extend from opposite sides of the base member at an angle***, the reflector is mounted to each of the lighting strips such that a bottom edge of each side wall extends along the entire length of the lighting strip and each side wall extends away from a bottom portion of the light emitting portion of each of the LEDs,<br>wherein the multi-faceted side walls cause light produced by the plurality of light emitting diodes (LEDs) to be amplified and formed into a uniform beam.<br><br>(emphasis added) | 1. A light emitting diode (LED) lighting arrangement for a lighting fixture, comprising:<br><br>a base plate;<br>a lighting strip coupled to the base plate, the lighting strip comprising a plurality of light emitting diodes (LEDs) arranged along a substantially planar surface of the lighting strip;<br>at least one reflector sheet comprising:<br>  a first multi-faceted side wall of the at least one reflector sheet extending along the lighting arrangement along an entire length of the lighting strip with a first edge adjacent a first side of the lighting strip and extending at an angle along an entire length of the lighting strip; and<br>  a second multi-faceted side wall of the at least one reflector sheet extending along the lighting arrangement along an entire length of the lighting strip, the second side wall having a first edge adjacent a second, opposite side of the lighting strip at an angle that extends along an entire length of the lighting strip,<br>***wherein the first and second multi-faceted side walls extend away from the lighting strip at an angle*** and are configured to cause light produced by the plurality of light emitting diodes (LEDs) to be amplified and formed into a uniform beam, and<br> … <br>(emphasis added) |

As a general rule, the terms "a" or "an" mean "one or more." *See, e.g., 01 Communique Lab'y, Inc. v. LogMeIn*, Inc., 687 F.3d 1292, 1297 (Fed. Cir. 2012). And the term "angle" means "the space within two lines or planes diverging from a common point or line." *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-456, 2018 WL 3239714, at *8 (E.D. Tex. July 3, 2018). The plain language of the claims in this case does not depart from these general rules.

There must be evidence of "clear intent" to limit the term "a" or "an" to "one." *LogMeIn*, 687 F.3d at 1297. Here, there is no evidence of intent, much less clear intent, to define "an angle" as "the same angle." Defendants' only argument for their same-angle theory is that "both claims use a singular term ('an angle') to describe how both walls extend." (Def. Br. at 7).  The *LogMeIn*, court, however, rejected a similar argument.  *See* 687 F.3d at 1296–97.

In *LogMeIn,* the accused infringer argued that the claim phrase "location facility" was limited to a single locator server computer because the claims referred to it in the singular (*i.e.*, with the words "a," "its," and "the"). *Id.* at 1296. But the Court found it "at odds with [the] well-established precedent" that the word "a" or "an" in patent claims means "one or more." *Id.* at 1297.

*Tyco Fire Prod. LP v. Reliable Automatic Sprinkler Co.* is also instructive.  *See* No. 10-cv-3446, 2011 WL 1884013, at *2–5 (E.D. Pa. May 17, 2011). In *Tyco*, the inventor claimed a sprinkler system containing a deflector to facilitate uniform and extended water distribution. *Id.* at *2. The deflector contained a peripheral region "which is *bent* toward the sprinkler body along a circular bend line." *Id.* (emphasis added). The accused infringer argued that "bent" meant "inclined at a *single angle* that is greater than 20 degrees" (emphasis added), which the court rejected because the intrinsic record did not reflect a "clear intent" to limit the definition of "bent." *Id.* at *4. The court thus construed "bent" as "altered from an originally straight or even condition," *i.e.*, per its plain and ordinary meaning. *Id.* at *4. Likewise, "an angle" here does not require each reflector sidewall to have the "same angle."

### ii.    *Claim differentiation*

When a dependent patent claim adds a particular limitation, there is a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). "[W]here the limitation that is sought to be read into an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at

4

its strongest." *Id.* (internal quotations omitted).

Here, dependent claim 6 of the '854 Patent and dependent claim 7 of the '881 Patent both are directed to side walls that are "symmetrical about an axis of symmetry that runs through a center of the base member." These dependent claims thus cover same-angled side walls:

| |
|---|
| Claim 6 of the '854 Patent: |
| The light emitting diode (LED) lighting arrangement for a lighting fixture as claimed in claim 1, wherein the first and second multi-faceted side walls extend away from a base member and ***are symmetrical about an axis of symmetry that runs through a center of the base member***. |
| (emphasis added) |
| Claim 7 of the '881 Patent: |
| A light emitting diode (LED) lighting arrangement for a lighting fixture as claimed in claim 1, wherein the side walls extend away from a base member and ***are symmetrical about an axis of symmetry that runs through a center of the base member***. |
| (emphasis added) |

Under claim differentiation theory, independent claim 1 of each of the '854 and '881 Patents is broader than the corresponding dependent claim and includes differently-angled side walls. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324–25 (Fed. Cir. 2005) (reversing the district court's narrow construction of the independent claim term "baffle" as "extend[ing] inward from the steel shell walls at an oblique or acute angle to the wall face" because certain dependent claims already limited "baffle" as proposed, rendering the corresponding independent claim as broader).

Defendants argue that claim 7 of the '854 Patent and claim 9 of the '881 Patent require "that both side walls extend from the lighting strip at the same angle." *See* Def. Br. at 7. Both of those claims, however, are directed to angles formed within the ***same side wall***—not angles formed by the two separate side walls with the base. Specifically, ***each*** side wall can be multi-angled and

5

comprise: (i) a "first portion" forming a "first angle" with the base member; and (ii) a "second portion" forming a "second angle *__with the first portion__*" of the side wall:

| |
|---|
| Claim 7 of the '854 Patent:<br><br>The light emitting diode (LED) lighting arrangement for a lighting fixture as claimed in claim 6, wherein the first and second multi-faceted side walls each comprise a first portion defining a first angle with the base member and a second portion defining a second angle *__with the first portion__*.<br><br>(emphasis added) |
| Claim 9 of the '881 Patent:<br><br>A light emitting diode (LED) lighting arrangement for a lighting fixture as claimed in claim 8, wherein the side walls each comprise a first portion defining a first angle with the base member and a second portion defining a second angle *__with the first portion__*.<br><br>(emphasis added) |

This nuance is contextualized in the patent specification. For example, Figure 16 (reproduced below) shows angles Θ and φ formed by the *__same side wall__*, which is different from each side wall forming "an angle" with the base member:

6

FIG.16

*See also* '854 Patent, at 17:41-46.[1] Defendants' thus cannot rely on claims 7 and 9 to alter the plain and ordinary meaning of claim 1.

### iii.    *Specification*

Defendants' reliance on the specification is also misplaced. To limit the scope of claims based on the specification, statements in the specification must "rise[] to the level of 'a clear and unmistakable disclaimer.'" *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) (*quoting Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366–67 (Fed. Cir. 2012))). Defendants' brief fails to point to anything in the specification that "clearly and unmistakably" disclaims differently angled side walls.  *See* Def. Br. at 8-9.

The specification in fact teaches that "the side walls of the reflector … ***may be*** symmetrical about an axis of symmetry that runs through a center of the base member," *see* '854 Patent, at

---

[1] Defendants' brief also points to claim 7 of the '854 Patent and claim 9 of the '881 Patent to argue that "the patentee knew how to claim the possibility of two different angles." Def. Br. at 7.  But the brief contradicts itself in footnote 3 by admitting that "'[f]irst' and 'second' terminology would not, of course, require two different angles…"

3:27-29 (emphasis added), meaning that asymmetrical arrangements are also within the scope of the invention. Indeed, Figure 15 from the specification (reproduced below) shows that the two side walls of the reflector could form different angles with the base member/lighting strip:



(annotations added). Figure 15 depicts the zone of illumination of the lighting fixture 101. *See* '854 Patent, at 16:51-62. A visual examination of Figure 15 would indicate to a POSITA that the illumination pattern below the fixture is asymmetric, which necessarily implies that the side walls of the reflector are at different angles from the base. *See* Declaration of Dr. Eric Brettschneider in Support of Defendants' Responsive Claim Construction Brief ("Brettschneider Decl.") at ¶¶ 25-33. To construe the side walls as same-angled, then, would be to construe them "at odds with the specification as a whole." *See Honeywell Int'l, Inc. v. Nikon Corp.*, 589 F. Supp. 2d 433, 444 (D. Del. 2008) (for a patent directed to a liquid crystal display apparatus, rejecting a proposed construction of "viewing angle" as limited to "vertical viewing angle" because horizontal

8

luminance tailoring was also contemplated by the specification); *CAO Lighting, Inc. v. Gen. Elec. Co., Consumer Lighting (U.S), LLC*, No. CV 20-681 (MN), 2022 WL 1477515, at *6 (D. Del. May 10, 2022) (for a patent directed to an illumination device, rejecting a proposed construction that panels for mounting semiconductor devices are "oriented angularly with respect to each other" because the specification allowed the panels to be "oriented with respect to each other at *any desired angle*") (emphasis added)).

Defendants suggest that because all the embodiments in the specification show the two side walls as forming the same angle with the base member/lighting strip, the two angles must be the same. *See* Def. Br. at 7-8. Aside from being wrong about the embodiments (see Fig. 15 discussed above), Defendants mistakenly equate claim scope with the embodiments, ignoring the Federal Circuit's repeated admonitions against confining the claims to th[e] embodiments. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

"It is [] not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner*, 669 F.3d at 1366. "Even where a patent describes only a single embodiment, absent a 'clear intention to limit the claim scope,' it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification." *Weatherford*, 2018 WL 3239714, at *9 (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004). Even assuming Defendants argument is correct that the specification contains no teaching or suggestion about differently angled side walls (which is incorrect), Defendants' proposed construction still falls flat.[2]

---

[2] The same reasoning applies to negate Defendants' reliance on Figure 11 of the '713 provisional, which, as Defendants admit, shows "another possible configuration for the reflector" (i.e., only an embodiment). *See* Def. Br. at 7-8.

In arguing for a limiting construction of "bent" as "inclined at a single angle that is greater than 20 degrees," the accused infringer in *Tyco* argued that the specification: (i) disclosed only greater-than-20-degrees embodiments; and (ii) differentiated multiple-angled deflectors in the prior art. *See* 2011 WL 1884013, at *2-4. *Id.* at *2-3. But the court rejected the arguments, ruling that the specification did not rise to the level of the "clear intent" required to limit the claim scope. *Id.* at *4. The Court should similarly reject Defendants' argument here.

### iv.   *Extrinsic evidence*

Because the '881 and '854 patents are generally directed to streetlights (*see, e.g.*, '854 Patent, at 2:7-8), a person of ordinary skill in the art ("POSITA") would have understood that the two angles are more likely to be *different* rather than same. *See* Brettschneider Decl. at ¶¶ 26-30, 34-35. That is because in order to uniformly light the roadway, the distribution from the base of the mounting pole towards the opposite side of the street must necessarily be asymmetric. *Id.* Such asymmetric light distributions would require an asymmetric reflector design. *Id.* The extrinsic evidence is thus in sync with the intrinsic record.

A patentee is entitled to the full scope of the claims. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009). A limitation cannot be imposed on claim scope "where none appears." *Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1371 (Fed. Cir. 2010). That is the case here. As explained above, neither the intrinsic record nor the extrinsic evidence supports Defendants' same-angle theory. No construction of the claim phrases is needed. Plain and ordinary meaning governs.

C.      U.S. Patent No. 8,721,114 ("the '114 Patent")

1.      "a first [second] reflector extending from the central body adjacent to the first [second] group of LEDs for directing light from the first [second] group of LEDs in the illumination direction," Claim 1

| ALSI'S Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Plain and ordinary meaning. | "a first [second] reflector extending from the central body adjacent to the first [second] group of LEDs for directing light *only* from the first [second] group of LEDs in the illumination direction" (emphasis added) |

As an initial matter, the plain language of Claim 1 of the '114 Patent does not restrict the illumination pattern as Defendants suggest. *See* Def. Br. at 10.[3] Defendants do not argue otherwise. *Id.* But in their proposed construction above, Defendants base the insertion of the word "only" on the patent's specification and prosecution history. Neither the specification nor the prosecution history, however, evidences a "clear and unmistakable disclaimer" of claim scope warranting an exception to the general rule that claims are construed according to their plain and ordinary meaning. Defendants' litigation-driven approach should thus be rejected.

i.      *Specification*

To limit the scope of claims based on the specification, statements in the specification must "rise[] to the level of 'a clear and unmistakable disclaimer.'" *Intel*, 915 F.3d at 797 (*quoting*

---

[3] Dependent claim 3 limits the device of Claim 1 to "wherein the first and second reflectors are shaped for directing light from the first and second groups of LEDs in the illumination direction." *Id.* Applying claim differentiation, Claim 1 is necessarily broader and not limited to a device in which each reflector reflects light only from its own LEDs.

11

*Thorner*, 669 F.3d at 1366–67); *see also Ancora Techs., Inc. v. LG Elecs. Inc.,* No. 1-20-CV-00034-ADA, 2020 WL 4825716, at *2 (W.D. Tex. Aug. 19, 2020).

Defendants' proposed construction fails even before the specification is analyzed for any disclaimer. Defendants' argument is premised on "various embodiments where first and second reflectors are designed to direct light solely from their respective LEDs." Def. Br. at 11. Even assuming that Defendants' assertion about the embodiments is true (it is not), Defendants' proposed construction contravenes the basic rule that claims cannot be construed by confining them to the embodiments. *See Phillips*, 415 F.3d at 1323; *see also Thorner*, 669 F.3d at 1366; *Innova/Pure Water*, 381 F.3d at 1117; *Tyco*, 2011 WL 1884013, at *4.

Regardless, nothing in the specification passages quoted in Defendants' brief or the specification figures reproduced therein—all of which merely describe *embodiments*—even comes close to the requisite level of "clear and unmistakable disclaimer" of claim scope. *See* Def. Br. at 11-12. Defendants' brief selectively quotes from a specification paragraph describing an embodiment illustrated by Figure 1 (*Id.* at 11) but omits the paragraph's last sentence, which is indicative of an intent to *not* limit the claim scope: "Alternatively, the LEDs of the device 1 may have one of a number of other suitable orientations depending on the desired lighting effect and on the orientation of the reflector 5." *See* '114 Patent, 3:55-58. Other statements in the specification also support a broader scope. *See, e.g.*, '114 Patent, 4:1-8 ("[A]ny suitable orientation of the LEDs 8 is possible."); *id.*, 5:25-26 ("The number of facets and the angles between pairs of facets is variable …."); *id.*, 6:5-8 ("Alternatively, the reflectors 105 can have one of a number of other suitable cross-sectional shapes, including v-shaped cross sections and c-shaped cross sections.").

A POSITA would not read the specification as limited to two reflectors where each reflector is reflecting light only from one group of LEDs. *See* Brettschneider Decl. at ¶¶ 39-41, 44-

45. Defendants' reliance on Figures 1, 7, and 8 for their proposed construction is therefore flawed. *See* Def. Br. at 11-12. Thus, the specification far from limits the claim scope as Defendants suggest.

### ii.    *Prosecution history*

To deviate from a claim term's plain and ordinary meaning, the prosecution history must show a "clear disavowal of claim scope." *Thorner*, 669 F.3d at 1366. "The standard for disavowal of claim scope is [] exacting." *Id.* "[F]or prosecution disclaimer to attach, … the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1325–26 (Fed. Cir. 2003).

The prosecution history statements Defendants point to do not clearly and unmistakably disavow claim scope. *See* Def. Br. at 15-16. Defendants emphasize the prosecution history statement that, in the claimed illumination device, "each reflector direct[s] light of one of the groups of the LEDs." *Id.* at 16. But the prosecution history statement does *not* state that "each reflector direct[s] light of *only* one of the groups of the LEDs." (emphasis added). *See* DN 54-7, at 8-9. In other words, Defendants' proposed word "only" is missing from that prosecution history statement, and nothing else in the file supports such a drastic narrowing of claim scope. *See, e.g.*, *Ancora*, 2020 WL 4825716, at *11 (demanding "more evidence" to find a "clear and unequivocal disavowal" of claim scope). The same reasoning applies to the prosecution history statement "amended claim 35 requires separate groups of LED's and separate reflectors directing light from the separate groups of LEDs." The statement is again missing the word "only:" the record does not suggest that the claimed illumination device is designed such that each reflector excludes or negates the reflection of light originating from the other group of LEDs. *See* DN 54-7, at 8-9. A POSITA would not read the prosecution statements distinguishing Kaszuba as clearly and

13

unmistakably disavowing the claim scope as Defendants suggest. *See* Bretschneider Decl. at ¶¶ 42-44, 46.

A prosecution disclaimer does not exist "[w]here the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations.'" *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (*quoting Cordis Corp. v. Medtronic AVE*, Inc., 339 F.3d 1352, 1359 (Fed.Cir.2003). While the two sentences in the '114 Patent's prosecution history served to distinguish the claimed illumination device from the UV curing chamber disclosed in the prior art reference Kaszuba, the statements did not clearly disclaim any claim scope—and certainly not as contended by Defendants. *See CAO Lighting, Inc. v. Light Efficient Design*, No. 17 C 7359, 2019 WL 1468139, at *4 (N.D. Ill. Apr. 3, 2019) ("Defendant has only identified one sentence in the entire prosecution history of the [asserted patent] that relates to the milliwatts/lumens distinction, and while it did serve the function of differentiating the [the asserted patent] from prior art, that sentence does not even disclaim any specific meanings.").[4] Like the patentee's statements in *CAO Lighting*, ALSI's statements "served the function of differentiating [the '114 Patent from Kaszuba]" but did not "disclaim any specific meanings" or claim scope. *Id.*

"For a statement during prosecution to qualify as a disavowal of claim scope, it must be so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022) (internal quotations omitted). That "exacting" standard is not met here. The claim phrase is clear on its face, and no construction is necessary beyond its plain and ordinary meaning.

---

[4] The prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *See Phillips*, 415 F.3d at 1317.

**D.    U.S. Patent No. 9,049,753 ("the '753 Patent")**

**1.    "monitor for monitoring an operational characteristic of a light source comprised in the light fixture", Claim 1**

| ALSI'S Proposed Construction | Current and Hubbell's Proposed Construction |
|---|---|
| No construction necessary.[5]<br><br>This claim term does not invoke § 112 ¶ 6. | The term "monitor for monitoring" is a means/step-plus-function clause under pre-AIA 35 U.S.C. § 112 ¶ 6, with:<br><br>Function:  "monitoring an operational characteristic"<br><br>Structure:  the corresponding structure is not linked and the claim is therefore indefinite under 35 U.S.C. § 112 ¶ 1. |

Defendants cannot meet their burden to overcome the presumption that 35 U.S.C. § 112 ¶ 6 does not apply in light of the claims, specification, prosecution history, and extrinsic evidence.

**i.    *The claim does not use "means for" and is presumed not to invoke 35 U.S.C. § 112 ¶ 6.***

None of the claims in the '753 Patent include the language "means for." Accordingly, the presumption is that § 112 ¶ 6 is ***not*** invoked. *See Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022) ("[W]e presume that a claim limitation is not drafted in means-plus-function format in the absence of the term 'means.'"). Defendants bear the burden of overcoming this rebuttable presumption, which they cannot do.

---

[5] For terms/phrases where ALSI has indicated that no construction is necessary, ALSI contends that either no construction is necessary or the term should be construed according to its plain and ordinary meaning.

####      ii.      *The intrinsic evidence confirms that the term "monitor" has a structural meaning.*

In determining whether § 112 ¶ 6 applies, "[t]he standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). Where the claim element/clause in question lacks the word "means," the presumption can only be overcome if the challenger demonstrates that the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function." *Id.* (quotes in omitted citations).

Here, the intrinsic evidence demonstrates that "monitor" is understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure. To begin, noticeably absent from Defendants' Claim Construction Brief (Def. Br.) is any proposed construction for "monitor" in claim 20, which is also being asserted. Claim 20 recites:

> A smart metered light fixture comprising:
>     a light source;
>     a power supply device;
>     a ***monitor*** configured to collect real-time alternating current (AC) current, voltage, and power factor measurements used by a power supply for the light source; and
>     a connection through an optical isolation device configured to transmit the collected measurements to a communications device located on a DC side of the power supply.

DN 1-1, '753 Patent, 17:49-57 (emphasis added).

This contradiction illustrates that the Defendants do not really think that "monitor" fails to "recite sufficiently definite structure." Other non-asserted claims also show that "monitor" recites sufficiently definite structure. Claim 19 recites "a ***monitor*** coupled to the surge protection component, the ***monitor*** configured to monitor the surge protected connection, wherein the ***monitor*** is configured to provide a signal via an optical isolation device…and, wherein the ***monitor***

16

is configured to cease the signal to the optical isolation device…" DN 1-1, '753 Patent, 17:38-48 (emphasis added); *see also* Claim 21 (repeatedly recites "a *monitor*") (citation omitted).

The specification of the '753 Patent is replete with references to a *monitor* demonstrating that the term recites sufficiently definite structure to a POSITA. These include:

- "The light fixture includes a surge protection device with a *monitor* that indicates when surge protection fails." DN 1-1, '753 Patent, Abstract (emphasis added);

- "A communication device positioned between the power supply receives information from *the monitors* and wirelessly transmits information regarding the monitored operational characteristics…" DN 1-1, '753 Patent, Abstract (emphasis added);

- "For example, a *monitoring chip* may be positioned to perform measurements at the point where the power supply receives the AC power 60." DN 1-1, '753 Patent, 9:22-24 (emphasis added);

- "Thus, the optical isolation device 31 within the surge protection device serves as a *monitor* that provides a signal indicating that the protected connection is operating correctly." DN 1-1, '753 Patent, 9:53-56 (emphasis added); and

- "At step 502, at least one operational characteristic of a light source is monitored, e.g., via *monitor* that is both internal to an [sic] integrated with the light fixture." DN 1-1, '753 Patent, 12:63-65 (emphasis added).

In addition, one of the provisional applications that is incorporated by reference in the '753 Patent includes additional disclosure of the *monitor* for monitoring an operational characteristic of a light source.

The specification of the '753 Patent states that one of the "operational characteristics" monitored by the *monitor* is current consumption. DN 1-1, '753 Patent, Abstract ("An operational characteristic *monitor* monitors an operational characteristic of the light source, such as *current consumption*, *wattage* [power], real-time temperature, a brightness level, and/or an efficiency of the light fixture.") (emphasis added); 3:36-43 ("for remote secure monitoring of voltage, *current consumption*, and temperature of a single LED lighting fixture…") (emphasis added); Claim 8,

17

16:44-48 ("wherein the monitored characteristic comprises at least one selected from the group consisting of *current consumption*, *wattage* [power], real-time temperature, a brightness level, and an efficiency of the light fixture.") (emphasis added); *see also* Claim 14 (citation omitted).

Defendants' argument and citation of *Verint Sys* from the S.D. of New York is misleading because it did not address the term "monitor." Def. Br. at 20. Instead, *Verint* addressed "communication monitoring system" and "monitoring device operable." *Verint Sys. v. Red Box Recorders, Ltd.*, 166 F. Supp. 3d 364, 381-383 (S.D.N.Y. 2016). As opposed to the noun "monitor" in the '753 Patent, the claim language in *Verint* addressed the verb "monitoring." Nor did *Verint* hold that "monitor" was a nonce word. Instead, the court addressed the claim terms "system" and "device." For example, the court held:

> The term "system," although qualified as a "communication monitoring system," does not impart sufficient structure. ***"System" standing alone is a nonce word that does not describe a structure*** that could perform the listed functions and the modifier "communication monitoring" provides a functional description of the system but not structure…"

> The term "monitoring device" invokes MPF claiming because ***it uses the nonce term "device"*** without providing sufficient additional structure."

*Verint Sys.*, 166 F. Supp. 3d at 381, 383. (emphasis added).

The *Verint* court also put great weight on the fact that the term "monitoring device" did not appear anywhere in the specification. *Id.* at 383. Specifically, the court held that "[t]he failure to even reference this device in the specification raises enough doubt about whether a person of ordinary skill in the art could "understand what structure corresponds to the means limitation."" *Id.* As shown above, the specification of the '753 patent uses the term "monitor" as a noun numerous times.

Next, the '753 Patent claims priority to, in part, Provisional Application No. 61/525,448 ("the '448 Provisional") titled "Lighting Device Communication Apparatus" filed August 19, 2011

18

(attached as Exhibit Z to Declaration of Jaimin H. Shah, Esq. in Support of Defendants' Responsive Claim Construction Brief). DN 1-1, '753 Patent, 1:6-12. The '753 Patent also incorporates by reference the entire contents of the '448 Provisional. *Id.* The '448 Provisional discloses a ***monitor*** that monitors current consumption of the LED lighting fixture. Specifically, the '448 Provisional describes the current monitoring integrated circuits in relation to the detailed schematic of Figs. 3 and 5:

> ***Current monitoring (LED power consumption) can be achieved through U2***, and U3. ***Such a component can be supplied for each of the power supplies being monitored***, as these components sense LED current through a sensing resistor Rsense R1/Rsense R2. The current signal can be amplified by U2/U3 and is ultimately driven as a voltage into pins of a RF engine…Additionally, the PCB assembly may include resistor dividers (R9/R13 and R36/R37) to sense the voltages of the LED rails and drive those values into the RF engine where certain computing can be performed to calculate the actual power consumed by the LEDs 124a-124n. In some examples, ***current monitoring (U2***, U3) for two separate power supplies/LED banks may be provided.

(U.S. Provisional Application No. 61/525,448, Paragraph [00029]) (emphasis added).



This same disclosure is included in the '753 Patent (6:38-57) with Fig. 5 of the '448 Provisional incorporated into the '753 Patent by reference. DN 1-1, '753 Patent, 1:6-12. Fig. 5 from the '448 Provisional, shown above (emphasis added), is labeled "I MONITOR" where 'I' stands for current, i.e., the circuit is a Current Monitor. *See* Declaration of Brian D'Andrade, Ph.D.,

P.E., in Support of Defendants' Responsive Claim Construction Brief ("D'Andrade Decl."), ¶¶ 22-23. As stated in the '448 Provisional and shown in Fig. 5 above, current monitoring and LED power consumption are achieved through U2, which is labeled as LTC6102HV and is a Linear Technology Precision Zero Drift Current Sense Amplifier. Linear Technology LTC6102HV Data Sheet, attached as Ex. 2 to D'Andrade Declaration. The LTC6102HV is a high voltage, high-side current sense amplifier that is used to monitor current. *Id*. at cover page ("The LTC6102/LTC6102HV monitor current via the voltage across an external sense resistor (shunt resistor)"). Some of its applications include current shunt measurement, battery monitoring, remote sensing, load protection, motor control, and automotive controls. *Id.* The LTC6102HV includes a maximum input sense voltage of 2V that allows a wide range of currents to be monitored. *Id.*

A POSITA would know from the intrinsic evidence to the '753 Patent that the term ***monitor*** has a sufficiently definite meaning as the name for structure.

### iii.    *The claim is not indefinite.*

Should the Court find the presumption against § 112 ¶ 6 is overcome, the Court must next consider whether Defendants can prove by clear and convincing evidence that the claims are indefinite for lack of corresponding structure. However, Defendants cannot meet their burden in light of the extensive descriptions of the corresponding structure for the "monitor" in the claim, the specification, and the '448 Provisional incorporated by reference discussed above. Contrary to Defendants' argument, the disclosed structure of a "current sensor" is sufficient "for monitoring an operational characteristic of a light source comprised in the light fixture." D'Andrade Decl. ¶¶ 22-28.

If the Court were to find the presumption against § 112 ¶ 6 is overcome, then the Court must first identify the claimed function. *Williamson*, 792 F.3d at 1351. "The statute does not permit

limitation of a means-plus-function claim by adopting a function different from that *explicitly* recited in the claim." *Micro Chem. Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) (emphasis added). Defendants' proposed function is incorrect because it is incomplete and not as explicitly recited in the claim. If the claim were a means-plus-function claim, then the explicitly recited function would be "monitoring an operational characteristic of a light source comprised in the light fixture." DN 1-1, '753 Patent, 16:4-5. Defendants' proposed "monitoring an operational characteristic" stops short of what is explicitly recited in claim 1 and therefore is wrong.

Once the Court has identified the explicitly recited claimed function, it must then determine what structure, if any, disclosed in the specification corresponds to the claimed function. *Williamson*, 792 F.3d 1339, 1351 (Fed. Cir. 2015). As set forth at length above, the disclosed structure of "a current sensor" is sufficient "for monitoring an operational characteristic of a light source comprised in the light fixture," particularly where one of the operational characteristics is current. D'Andrade Decl. ¶¶ 20-28.

### 2. "a communication component positioned between the power supply device and the light source," Claim 1

| ALSI'S Proposed Construction | Current and Hubbell's Proposed Construction |
|---|---|
| No construction necessary.<br><br>Plain and ordinary meaning. | "a communication component ***electrically*** positioned between the power supply and the light source" (emphasis added) |

Defendants ask that the Court add the word "electrically" and rewrite the above clause of claim 1 of the '753 Patent. However, there is no need to add "electrically" to what is already an electronic device. Furthermore, Defendants' proposed construction will only serve to confuse, not

help, the jury as to the meaning of the claim. Claim terms "are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). Defendants have not identified any definition or disavowal that would justify revising the "communication component" clause of claim 1.

The phrase "a communication component ***positioned*** between the power supply device and the light source" is something the jury will readily understand in the context of the claim based on its plain and ordinary meaning. In the context of the '753 Patent, "positioned" describes where two or more electrical components interact with each another, which is always "electrical" in some manner. The invention of claim 1 is directed to "[a] light fixture monitoring and communication device" that includes "a monitor" and "a communication component." A POSITA immediately understands from the claim language itself, and even more so from reading the specification, that such a device is made up of parts and components that interact with each other electrically as the entire device is made up of electrical components. Revising claim 1 to say "electrically positioned" is like saying "wet water;" completely unnecessary to understanding claim 1.

The specification repeatedly uses the phrase "positioned" to describe the interaction of various electrical components. While addressing the need in the art for more accurate power source measurements, the Background section of the specification states:

> It is further desirable ***to monitor aspects of a power supply used by*** and to provide surge protection for ***one or more light sources***. LED fixtures as well as most electrical appliances have some form of an electronic power supply. Although hand held and other test equipment exist, such equipment is completely external to the

22

electrical appliance and the power supply. Thus, the test equipment would have to be ***positioned*** in front of the equipment on the AC input side. Accordingly, there is a need for providing more accurate power source measurements.

DN 1-1, '753 Patent 1:39-48 (emphasis added)

Electrical test equipment inherently interacts "electrically" with an electrical appliance, such as an LED fixture, e.g., in order to make power source measurements. D'Andrade Decl., at ¶ 35. What "positioned" in the above portion of the specification is telling a POSITA is where the measurement takes place. In the above example, the test equipment would have to be "positioned" in front of the equipment on the AC input side, meaning that the test equipment takes its measurement at that "position" in the electrical appliance. D'Andrade Decl., at ¶¶ 31-35.

Other examples include the following:

- "The communication device 10 may be ***positioned*** between a power supply 20 and the LED circuit strips 11 of the lighting fixture." DN 1-1, '753 Patent, 8:50-53 (emphasis added);

- "The surge protection device 30 is ***positioned*** between the AC power source 80 and the power supply 20." DN 1-1, '753 Patent, 8:57-58 (emphasis added);

- "For example, a monitoring chip may be ***positioned*** to perform measurements at the point where the power supply receives the AC power 60." DN 1-1, '753 Patent, 9:22-24 (emphasis added);

- "Optical isolation connections provide information monitored at the AC side of the system, e.g. at the AC side of the power supply 20 and at the surge protection device 30, to the communication device 10 ***positioned*** on the DC side of the system so that no direct connection between the AC and DC side is provided other than the power supply 20." DN 1-1, '753 Patent, 11:8-14 (emphasis added);

- "For example, the monitoring chip could be ***positioned*** to monitor the ballast of a fluorescent light." DN 1-1, '753 Patent, 11:16-18 (emphasis added); and

- "These instructions may be implemented via the communications device or via a driver ***positioned*** between the communications device and the light source." DN 1-1, '753 Patent, 13:13-15 (emphasis added).

In each instance above, the word "positioned" refers to the interaction of various parts and

23

components of the claimed light fixture monitoring and communication device. D'Andrade Decl., at ¶¶ 36-37.

Noticeably absent from Defendants' Claim Construction Brief is any attempt to add the word "electrically" to dependent claim 5, which is also being asserted against all of the Defendants. Claim 5 recites:

> The device according to claim 1, wherein the device is ***positioned*** on a direct current (DC) side of a power supply comprised in the light fixture.

DN 1-1, '753 Patent, 16:26-28 (emphasis added).

This contradiction illustrates that the Defendants do not really think that claim 1 requires construction by the Court to be properly understood by a POSITA. Because Defendants have failed to identify any definition or disavowal that would justify re-writing the "communication component" clause of claim 1, no construction is necessary.

## III.   CONCLUSION

For the foregoing reasons, ALSI respectfully requests that the Court rule that none of the claim terms and phrases disputed by Defendants require construction and that they are understandable based on their plain and ordinary meanings.

DATED:  July 18, 2022                                     Respectfully submitted,


                                            By: /s/ *Thomas G. Southard*
                                            Thomas G. Southard (*Pro Hac Vice*)
                                            Brian S. Seal (*Pro Hac Vice*)
                                            Shaun D. Gregory (*Pro Hac Vice*)
                                            **TAFT STETTINIUS & HOLLISTER LLP**
                                            200 Massachusetts Ave., Suite 400
                                            Washington, D.C. 20001
                                            Tele: (202) 664-1537
                                            Fax: (202) 664-1586
                                            tsouthard@taftlaw.com
                                            bseal@taftlaw.com
                                            sgregory@taftlaw.com

R. Eric Gaum (*Pro Hac Vice*)
**TAFT STETTINIUS & HOLLISTER LLP**
200 Public Square Suite 3500
Cleveland, OH  44114-2302
Tele: (216) 706-3871
Fax: (216) 241-3707
egaum@taftlaw.com

Jaimin H. Shah (*Pro Hac Vice*)
**TAFT STETTINIUS & HOLLISTER LLP**
111 E. Wacker Dr, Ste 2800
Chicago, IL 60601
Tele: (312) 836-4171
Fax: (312) 527-4011
jshah@taftlaw.com

Mark D. Siegmund
State Bar No. 24117055
Craig D. Cherry
State Bar No. 24012419
Justin Allen
State Bar No. 24081977
**STECKLER WAYNE CHERRY & LOVE, PLLC**
8416 Old McGregor Road
Waco, Texas   76712
Tele:  (254) 651-3690
Fax:  (254) 651-3689
mark@swclaw.com
craig@swclaw.com
justin@swclaw.com

*Attorneys for Plaintiff*
*ALSI Holdings, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 18, 2022 a true and correct copy of the foregoing document was served upon all counsel of record via email pursuant to the Federal Rules of Civil Procedure as follows:

Thomas W. Cunningham
John P. Rondini
Frank A. Angileri
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075
Tele: (248) 358-4400
Fax: (248) 358-3351
tcunningham@brookskushman.com
jrondini@brookskushman.com
fangileri@brookskushman.com

Attorneys for Defendants

_/s/  Thomas G. Southard_
Thomas G. Southard