**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **ALSI HOLDINGS, LLC.,** | C.A. No.  6:21-cv-01187-ADA |
| *Plaintiff,* | |
| **v.** | PATENT CASE |
| **CURRENT LIGHTING SOLUTIONS, LLC, d/b/a GE CURRENT, A DAINTREE COMPANY, and** | **JURY TRIAL DEMANDED** |
| **HLI SOLUTIONS, INC., f/k/a HUBBELL LIGHTING, INC., both d/b/a HUBBELL CONTROL SOLUTIONS and/or CURRENT,** | |
| *Defendants.* | |

## DEFENDANTS' REPLY ON CLAIM CONSTRUCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................. 1

II.     REPLY ................................................................................................................... 1

     A.     U.S. Patent Nos. 8,322,881 ("the '881 Patent") and 9,699,854 ("the '854 Patent")—whether two "side walls" that "extend . . . at an angle" must extend at the same angle ................................................................................ 1

           1.     Claim language ........................................................................ 2

           2.     Claim differentiation ............................................................... 4

           3.     Specification ............................................................................ 5

           4.     Extrinsic evidence ................................................................... 6

     B.     U.S. Patent No. 8,721,114 ("the '114 Patent")—whether the claimed "first reflector"/"second reflector" direct light from only the "first group"/"second group," respectively, of LEDs ....................................... 6

           1.     Claim language ........................................................................ 8

            2.     Specification ............................................................................ 9

           3.     Prosecution History ............................................................... 10

     C.     U.S. Patent No. 9,049,753 ("the '753 Patent")—whether, since ALSI agrees the claimed positioning is electrical, a construction that includes the term "electrically" makes claim 1 clearer ............................................. 13

III.    CONCLUSION .................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*01 Communique Lab'y, Inc. v. LogMeIn, Inc.*,
    687 F.3d 1292 (Fed. Cir. 2012)........................................................................................ 3

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l.*,
    222 F.3d 951 (Fed. Cir. 2000)......................................................................................... 5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
    381 F.3d 1111 (Fed. Cir. 2004)................................................................................ 2, 3, 9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)....................................................................................... 6

*Poly-America, L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016)................................................................................. 10, 13

*Power-One, Inc. v. Artesyn Techs., Inc.*,
    599 F.3d 1343 (Fed. Cir. 2010)..................................................................................... 14

*TiVo, Inc. v. EchoStar Comms. Corp.*,
    516 F.3d 1290 (Fed. Cir. 2008)....................................................................................... 3

*Tyco Fire Prod. LP v. Reliable Automatic Sprinkler Co.*,
    2011 WL 1884013, at *2–5 (E.D. Pa. May 17, 2011) ....................................................... 4

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
    2018 WL 3239714, at *8 (E.D. Tex. July 3, 2018)........................................................... 2

## I.    INTRODUCTION

ALSI asserts five utility and two design patents in this case.  Defendants have attempted to be very focused in this claim construction briefing, raising only five terms (four issues) in their opening brief.  Defendants now further focus the issues by dropping one term—a term for which ALSI did not provide its position (despite Defendants' request) before briefing.  Thus, three issues remain for the Court.

## II.    REPLY

### A.    U.S. Patent Nos. 8,322,881 ("the '881 Patent") and 9,699,854 ("the '854 Patent")—whether two "side walls" that "extend . . . at an angle" must extend at the same angle

| U.S. Patent No. 8,322,881 | | | |
|---|---|---|---|
| Claim | Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
| 1 | a pair of integral multi-faceted side walls that extend from opposite sides of the base member at an angle | Plain and ordinary meaning | a pair of integral multi-faceted side walls that extend from opposite sides of the base member at the same angle |

| U.S. Patent No. 9,699,854 | | | |
|---|---|---|---|
| Claim | Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
| 1 | the first and second multi-faceted side walls extend away from the lighting strip at an angle | Plain and ordinary meaning | the first and second multi-faceted side walls extend away from the lighting strip at the same angle |

The claim language at issue requires two side walls ("a pair" in the '881 Patent and "first and second" in the '854 Patent) that "extend . . . at an angle" from a base member ('881 Patent) or lighting strip ('854 Patent).  DN 1-3 and 1-2, claim 1.  Defendants contend that the two side walls must extend at the same angle from the base member/lighting strip; ALSI contends the claimed

side walls may extend at different angles.  ALSI's many arguments—under the headings, "claim language," claim differentiation," "specification," and "expert testimony"—all fail to support its proposed construction.

### 1.    Claim language

Under the plain claim language at issue, a singular term—"an angle"—describes *two* side walls' extension and therefore requires that both walls extend at the same angle.  While "an angle" can certainly have different values, it can have only one value at a time; it cannot be, e.g., 45 and 60 degrees simultaneously.  Indeed, if one tried to read the "an angle" claim limitation on an arrangement where two side walls extend at different angles, the question—"what is the value of the claimed angle?"—could not be answered.

ALSI nonetheless argues that the claim language covers side walls extending at different angles, but ALSI's own definition of angle disproves ALSI's argument. ALSI asserts "the term 'angle' means 'the space within two lines or planes diverging from a common point or line.'"  DN 55 at 3, (quoting *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-456, 2018 WL 3239714, at *8 (E.D. Tex. July 3, 2018)).  In the '881 Patent the claim language places two limitations on the two side walls; they "[1] extend from opposite sides of the base member [2] *at an angle*."  The first limitation—"extend from the base member"—necessarily creates "space" between each wall and the base member, and thus requires that each wall extend at some angle under ALSI's definition of "angle" (quoted above).  The second limitation—"*at an angle*"—means something only if it modifies both side walls (as the grammar plainly requires) and thus requires the same angle.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("While not an absolute rule, all claim terms are presumed to have meaning in a claim.")

Likewise, claim 1 of the '854 Patent specifies (1) the first side wall "extend[s] at an angle along an entire length of the lighting strip," (2) the second side wall "extend[s] at an angle along an entire length of the lighting strip," and (3) "the first and second multi-faceted side walls extend away from the lighting strip *at an angle*." DN 1-2. Because the first two limitations already require that each of the side walls extend at some angle, the third limitation has meaning only if it requires the same angle, which the plain language requires, since "an angle" in the third limitation modifies *both* side walls' extension. *Innova/Pure Water*, 381 F.3d at 1119.

Faced with claim language that disproves its position, ALSI incorrectly characterizes the language and the law regarding "a" and "an." Regarding the claim language, ALSI asserts "the claims refer to each side wall's angle with the base as 'an angle.'" DN 55 at 2. But the claim language does ***not***, as ALSI asserts, "refer to each [singular] side wall's angle with the base as 'an angle.'" Rather it says that two ("pair" or "first and second") [plural] "side walls" extend "at an angle." Again, since "an angle" modifies two side walls, both must extend at the same angle.

ALSI also misapplies the law that "a" or "an" means one or more. DN 55 at 3-4 (discussing *01 Communique Lab'y, Inc. v. LogMeIn, Inc*., 687 F.3d 1292, 1297 (Fed. Cir. 2012)). That law applies when "a" or "an" modifies an object (e.g., "location facility"), in which case an open-ended claim can include additional such objects. But the claim language at issue uses "an" to reference a relationship, not an object, here "an angle" between two side walls and the base (or lighting strip). *TiVo, Inc. v. EchoStar Comms. Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008) (Finding "an" means singular stating: "[t]he pertinent claim language refers to 'assembl[ing] said video and audio components into an MPEG stream,' which in context clearly indicates that two separate components are assembled into a single stream, not that the video components are assembled into

3

one stream and the audio components into a second stream.") As discussed, "an angle" cannot have two different values at the same time.

Finally, the *Tyco* case on which ALSI relies is irrelevant.  DN 55 at 4 (discussing *Tyco Fire Prod. LP v. Reliable Automatic Sprinkler Co.,* 2011 WL 1884013, at *2–5 (E.D. Pa. May 17, 2011)).  Defendants are not asserting that "an angle" has some numeric limitation; it can be any value but by the plain language requires the same value for both walls' extension.

### 2.    Claim differentiation

With no support in the claim 1 language for its position that "an angle" can have two values simultaneously, ALSI tries to read that breadth in via claim differentiation—but ALSI fails.  On page 5, ALSI quotes dependent claims requiring an "axis of symmetry" and argues that "[u]nder claim differentiation theory," the independent claims "include[] differently-angled side walls."  In fact, the "axis of symmetry" claims do ***not*** imply ALSI's different-angle construction because the "axis of symmetry" claims are narrower than the independent claims under Defendants' same-angle construction.  The "axis of symmetry" limitation requires complete symmetry, e.g., three angled facets or an arcuate portion on each wall; the "an angle" limitation merely requires the same initial angle for both side walls and allows for other subsequent variation between the two walls, e.g., in another angle in the side walls or in the shape (flat vs. arcuate) of the walls.

ALSI's arguments concerning claim 7 ('854 Patent) and claim 9 ('881 Patent) support *Defendants'* position.  See DN 55 at 5-7.  Defendants agree that the "first angle" and "second angle" limitations of these claims are on the same wall, but they still reenforce Defendants' point (DN 54 at 7) that patentee knew how to claim multiple angles when it desired.  (Patentee could have claimed a first angle for the first wall and a second angle for the second wall to allow different angles for each wall.)  And for the same reasons discussed above for the "an angle" limitation, in these dependent claims each of the "first angle" and the "second angle" modifies two walls, and

therefore each has the same value for both walls.  Indeed, when addressing these claims, ALSI cites Figure 16, which shows an axis of symmetry and therefore supports Defendants' claim construction position that both walls have the same angles.  DN 55 at 6-7.

### 3.    Specification

Under the "specification" section of its brief, ALSI argues that the asymmetric illumination pattern shown in Figure 15 "necessarily implies that the side walls of the reflector are at different angles from the base."  DN 55 at 8 (citing Brettschneider Decl. at ¶¶ 25-33).  ALSI cites its expert (not the specification) for this "specification" argument because the patent specification describing Figure 15 says nothing about side wall shape.  Further, one cannot presume anything from Figure 15 alone since one cannot assume that patent drawings are drawn to scale.  *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l.*, 222 F.3d 951, 956 (Fed. Cir. 2000) ("[I]t is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue.") (citation omitted).)  Indeed, Figure 15 clearly is *not* to scale, since (1) the 30' pole 181 is shown longer than the 50' beam width 183, and (2) the fixture is approximately half the size of the 50' beam, i.e., an absurdly large 25'.  Josefowicz Decl., ¶¶ 24-29.

Regardless, an asymmetrical *beam* does not imply asymmetrical side wall *angles* since many other factors can influence beam shape.  These factors include: (1) additional asymmetrical side wall angles; (2) the angle of fixture attachment; (3) LED arrangement; and (4)diffuser/lens shape.  Josefowicz Decl., ¶¶ 30-36.

ALSI also argues that it is improper to limit claim scope merely because all embodiments include a feature (here, side walls extending at the same angle).  DN 55 at 9.  Defendants' construction is *not* based solely or even primarily on the fact that all embodiments include same-angled side walls.  On the contrary, as discussed above, the plain claim language compels

5

Defendants' construction.  The specification's uniform disclosure further confirms the plain claim language.

### 4.     Extrinsic evidence

Finally, again citing its expert, ALSI argues that a POSITA "would have understood that the two angles are more likely to be different rather than same."  DN 55 at 10 (citing Brettschneider Decl. at ¶¶ 26-30, 34-35).  First, expert testimony cannot change the extensive intrinsic evidence discussed above.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (en banc) (Although courts may consult extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises," such evidence is "'less significant than the intrinsic record.'").  Second, the patents themselves undercut this view, because all of the patent figures illustrating side wall shape show them as symmetrical.  See Figures 16, 17, 19, 20 and 25 of the '881 and '854 Patents (DN 1-3 and 1-2).   So a POSITA reading these patents would understand that the angles between the side walls and the base member (or lighting strip) are the *same*.  Josefowicz Decl., ¶¶ 22, 29.

In sum, all of the intrinsic evidence confirms Defendants' proposed construction that the two claimed side walls extending at "an angle" extend at the same angle.

**B.     U.S. Patent No. 8,721,114 ("the '114 Patent")—whether the claimed "first reflector"/"second reflector" direct light from only the "first group"/"second group," respectively, of LEDs**

| U.S. Patent No. 8,721,114 | | | |
|---|---|---|---|
| Claim | Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
| 1 | a first reflector extending from the central body adjacent to the first group of LEDs for directing light from the first group of LEDs in the illumination direction | Plain and ordinary meaning | a first reflector extending from the central body adjacent to the first group of LEDs for directing light only from the first group of LEDs in the illumination direction |

| U.S. Patent No. 8,721,114 | | | |
|---|---|---|---|
| Claim | Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
| | a second reflector extending from the central body adjacent to the second group of LEDs for directing light from the second group of LEDs in the illumination direction | | a second reflector extending from the central body adjacent to the second group of LEDs for directing light only from the second group of LEDs in the illumination direction |

In language preceding the above-quoted disputed claim language, claim 1 of the '114 Patent specifies "first and second groups of Light Emitting Diodes LEDs connected to the central body" of the claimed light fixture. The disputed claim language specifies "a first reflector" and "a second reflector," and then uses parallel language to connect the first/second reflectors with the first/second groups of LEDs, respectively, in two ways. First, the first/second reflector "extend[s] from the central body adjacent to the [respective] first/second group of LEDs." Second, the first/second reflector is "for directing light from the [respective] first/second group of LEDs in the illumination direction." DN 1-5, claim 1.

The parties dispute the separateness of the first reflector/LED group from the second reflector/LED group. Defendants contend they are separate, meaning the first reflector reflects light only from the first LED group and the second reflector reflects light only from the second LED group. ALSI contends they are not, meaning each reflector can reflect light from both LED groups. As Defendants explained in their opening brief and below, the intrinsic evidence supports Defendants' construction. DN 54 at 10-17. Indeed, during the prosecution history, the patentee repeatedly emphasized the separateness of the first reflector/LED group from the second reflector/LED group, and disclaimed ALSI's proposed claim scope, i.e., two reflectors each reflecting light from one or more LED groups.

7

### 1.    Claim language

ALSI opens by asserting that "the plain language of Claim 1 of the '114 Patent does not restrict the illumination pattern as Defendants suggest" and "Defendants do not argue otherwise." DN 55 at 11.  Defendants did not need to "argue otherwise" because Defendants' construction follows the plain claim language.  As discussed, the claim language at issue places two limitations on the first/second reflectors: "[1] extending from the central body adjacent to the first/second group of LEDs [2] for directing light from the first/second group of LEDs in the illumination direction."  Only Defendants' construction accounts for both limitations.

More specifically, if the claim had only the first limitation, i.e., first/second reflectors "extending from the central body adjacent to the first/second group of LEDs," the first/second reflectors would direct light from the adjacent group of LEDs and could also reflect light from the other group of LEDs.  That captures ALSI's construction of *both* of the disputed limitations; ALSI says they cover two reflectors that reflect light from one or more LED groups.  But the claim does not stop there, it adds a second limitation—"for directing light from the first [second] group of LEDs in the illumination direction."  Since the first limitation already covers the first/second reflector reflecting light from the first/second LED group, this second limitation must add something more—it ties the first/second reflector *only* to the first/second LED group. ALSI's proposed construction does not give meaning to this second limitation, and when ALSI's expert discusses the disputed language, he focuses only on the first limitation.  See DN 55-1 at ¶ 45.[1]

---

[1] In a footnote, ALSI quotes claim 3 and argues based on claim differentiation that "Claim 1 is necessarily broader and not limited to a device in which each reflector reflects light only from its own LEDs."  DN 55 at 11, n.3.  ALSI misunderstands claim 3, which narrows claim 1 by focusing on the "shape" of the reflectors; it does not negate the separate reflector/LED groups required in claim 1.  Indeed, claim 4 depends from claim 3 and emphasizes claim 3's "shape" focus by specifying the reflector shape as one of "a curve, a parabola, an angle, a facet, and a plurality of facets."  DN 1-5.

8

In short, only Defendants' construction gives meaning to all of the claim language. *Innova/Pure Water*, 381 F.3d at 1119.

### 2.    Specification

Defendants showed in their opening brief that all of the '114 Patent's embodiments separately associate first/second reflectors with first/second LED groups.  DN 54 at 4-5, 11-12.  In response, ALSI  cites specification excerpts on page 12, but none addresses the separateness of the first reflector/LED group from the second reflector/LED group.    Rather the excerpts address the *orientation* of the LEDs and the specific *shape* of the reflectors.

Citing its expert, ALSI also argues that a "POSITA would not read the specification as limited to two reflectors where each reflector is reflecting light only from one group of LEDs." DN 55 at 12 (citing Brettschneider Decl. at ¶¶ 39-41, 44-45).  ALSI's expert-based argument is irrelevant because it arbitrarily divides the LEDs adjacent a reflector in a manner inconsistent with the claim, and it misunderstands Defendants' position.  Per the first parallel limitation discussed on page 7 above, the "first group of LEDs" are the LEDs adjacent the first reflector, and the "second group of LEDs" are the LEDs adjacent the second reflector.  (E.g., "a first reflector extending from the central body adjacent to the first group of LEDs.")  Defendants are not arguing, as ALSI suggests (DN 55 at 12), that the claim is "limited to two reflectors where each reflector is reflecting light only from one [arbitrarily defined] group of LEDs."  Rather, Defendants contend that the claimed *first* reflector does not reflect light from the claimed *second* group of LEDs *as defined by the claim* (the LED group adjacent the *second reflector*) and vice versa.  Defendants do not dispute, e.g., that a first reflector can reflect light from multiple arbitrarily defined LED groups *adjacent the first reflector*, because in the context of the claim, all of those arbitrarily defined LED groups could constitute the claimed "first group of LEDs" since they are adjacent the first reflector.

9

### 3.    Prosecution History

Defendants quoted in their opening brief the prosecution arguments where the patentee repeatedly emphasized the separateness of the first reflector/LED group from the second reflector/LED group. DN 54 at 15-16. Beyond quoting case language, ALSI's only response is that this extensive argument cannot support disclaimer because the patentee did not use the word "only." DN 55 at 13-14. ALSI's position is at best semantic, since the patentee could not have been clearer about the separating the first reflector/LED group from the second reflector/LED group. *Poly-America, L.P. v. API Indus., Inc*., 839 F.3d 1131, 1136 (Fed. Cir. 2016) ("While disavowal must be clear and unequivocal, it need not be explicit.")

To recap, at one point in the prosecution history, claim 36 depended from claim 35 (both reproduced below) and required among other things "a plurality of groups of LEDs" and "a plurality of reflectors, each reflector corresponding to at least one group of LEDs." That claim language corresponds to ALSI's proposed construction of the disputed first/second reflector limitations. The examiner rejected claim 36, stating among other things that the Kaszuba reference disclosed "a plurality of groups of LEDs . . . and a plurality of reflectors 36, each reflector corresponding to at least one group of LED." DN 54-6 at 3-4.

10

35.    (New) An illumination device for providing light in an illumination direction, the illumination device comprising:

a central body having a surface facing the illumination direction;

a group of Light Emitting Diodes (LEDs) connected to the central body, wherein the LEDs are oriented in the illumination direction; and

a reflector extending from the central body adjacent to the group of LEDs for directing light from the group of LEDs in the illumination direction,

wherein the reflector comprises a first side and a separate second side opposing the first side, each side extending substantially along a longitudinal axis of the illumination device.

36.    (New) The illumination device of claim 35, further comprising:

a plurality of groups of LEDs; and

a plurality of reflectors, each reflector corresponding to at least one group of LEDs.

**DN 54-7 at 3.**

The patentee responded by amending claim 35 to add (as shown below) numerous limitations claiming and separating the first reflector/LED group and the second reflector/LED group.

> 35.   **(Currently Amended)**       An illumination device for providing light in an illumination direction, the illumination device comprising:
>
> a central body having a surface facing the illumination direction and including a first heat dissipating mechanism for allowing heat to dissipate through a central portion of the central body;
>
> a ~~group~~ first and second groups of Light Emitting Diodes (LEDs) connected to the central body directly or via an attachment feature, the first and second group of LEDs being spaced apart from each other;
>
> a second heat dissipating mechanism including one or more openings formed in the central body or in the attachment feature; [[and]]
>
> a first reflector extending from the central body adjacent to the first group of LEDs for directing light from the first group of LEDs in the illumination direction; and
>
> a second reflector extending from the central body adjacent to the second group of LEDs for directing light from the second group of LEDs in the illumination direction,
>
> wherein heat generated by the first and second groups ~~group~~ of LEDs is dissipated through the central body via the first heat dissipating mechanism, [[and]]
>
> wherein the one or more openings of the second heat dissipating mechanism provide fluid flow cooling of the first and second groups ~~group~~ of LEDs, and
>
> wherein one of the first and second heat dissipating mechanisms allows heat to dissipate between the first and second reflectors.
>
> 36.   **(Canceled)**

**DN 54-7 at  2.**

The patentee then made multiple arguments emphasizing the separateness of the first reflector/LED group and the second reflector/LED group.  First, the patentee stated that "claim 35 *stresses* . . . two separate distinct pluralities of LED's . . . and first and second reflectors, *each reflector directing light of **one** of the groups of the LEDs*."   DN 54-7, at 8-9 (emphasis added). Second, the patentee stated: "Thus, the alleged 'multiple' reflectors of [prior art] Kaszuba all direct light from the same alleged multiple bulbs, while amended claim 35 requires *separate* groups of LED's and *separate* reflectors directing light from the *separate* groups of LEDs."  DN 54-7, at 8-9 (emphasis added).  By these arguments, the patentee expressing distinguished (and therefore disclaimed) "'multiple' reflectors [that] all direct light from the same alleged multiple bulbs."

12

*Poly-America, L.P.*, 839 F.3d at 1136.  Further, the patentee emphasized the separateness of the first reflector/LED group and second reflector/LED group.

Finally, as if the above wasn't already clear, the patentee stated that the amended claims require "multiple groups of LED's and *separate* reflectors associated with *each* group of LEDS." DN 54-7, at 9-10 (emphasis added).  That means that the reflector associated with the first group of LEDs is not associated with the second group of LEDs, and vice versa.  In the patentee's words, it "means that there is a group of LEDs with a first reflector" and "a second group of LEDs with a second reflector."  DN 54-7, at 9-10.

ALSI cannot cite anything in the prosecution history (or elsewhere) that supports its position that the disputed claim language covers multiple reflectors reflecting light from one or more LED groups.  On the contrary, the patentee disclaimed this scope.  Josefowicz Decl., ¶¶ 40-49.  Defendants' construction captures the plain meaning of the claims, conforms with the specification, and is necessary in view of the patentee's disclaimers and arguments in the prosecution history.

**C.    U.S. Patent No. 9,049,753 ("the '753 Patent")—whether, since ALSI agrees the claimed positioning is electrical, a construction that includes the term "electrically" makes claim 1 clearer**

| U.S. Patent No. 9,049,753 | | | |
|---|---|---|---|
| **Claim** | **Term** | **Plaintiffs' Proposed Construction** | **Defendants' Proposed Construction** |
| 1 | a communication component positioned between the power supply device and the light source | Plain and ordinary meaning | a communication component electrically positioned between the power supply device and the light source |

Defendants raised two issues for the '753 Patent.  The first concerned the above-quoted a "communication component positioned between the power supply device and the light source,"

13

which Defendants will reference below as the "positioned between" limitation.  DN 54 at 17-19. The second concerned a "monitor for monitoring an operational characteristic of a light source." DN 54 at 19-21.  Defendants are dropping this second issue now that ALSI has put forth its position, which Defendants requested but ALSI did not provide before the claim construction briefing.  See DN 54 at 21.

Regarding the "positioned between" limitation, it is unclear why ALSI opposes Defendants' construction.  Defendants' proposed construction adds the word "electrically" before "positioned between" to clarify that "positioned between" limitation addresses location in electrical, rather than physical terms.  Significantly, ALSI agrees: "In the context of the '753 Patent, 'positioned' describes where two or more electrical components interact with each another, which is always 'electrical' in some manner."  DN 55 at 22.  Adding "electrically" clarifies what the parties understand and prevents a lay jury from mistakenly believing that this limitation focuses on the components' physical locations.  There certainly is no harm in adding "electrically," since ALSI itself says "'electrically positioned' is like saying 'wet water'." *Id*.

A purpose of claim construction is clarifying the claims for a jury.  *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) ("The terms, as construed by the court, must ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims.").  Here the parties agree that the claimed "positioned between" limitation concerns electrical positioning and adding the word "electrically " clarifies that fact for a potential non-technical juror, so Defendants' proposed construction should be adopted.

### III.    CONCLUSION

For the foregoing reasons, only Defendants' proposed constructions follow the plain claim language, the specification, and the prosecution history, and they clarify the disputed terms for the jury.

DATED:  August 1, 2022                          Respectfully submitted,

By: */s/ Thomas W. Cunningham*
Frank A. Angileri (MI-P45611)
Thomas W. Cunningham (MI-P57899)
John P. Rondini (MI-P72254)
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075
(248) 358-4400/ F: (248) 358-3351
fangileri@brookskushman.com
tcunningham@brookskushman.com
jrondini@brookskushman.com

Jennifer Parker Ainsworth
WILSON, ROBERTSON & CORNELIUS, P.C.
908 ESE Loop 323, Suite 400
Tyler, TX 75701
jainsworth@wilsonlawfirm.com

*Attorneys for Defendants*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 1, 2022 a true and correct copy of the foregoing document was served upon all counsel of record via electronic mail to the addresses shown below:

| | |
|---|---|
| Thomas G. Southard<br>Brian S. Seal<br>Shaun D. Gregory<br>Taft Stettinius & Hollister LLP<br>200 Massachusetts Ave N.W., Suite 500<br>Washington, DC 20001<br>(202) 664-1545<br>tsouthard@taftlaw.com<br>bseal@taftlaw.com<br>sgregory@taftlaw.com<br><br>Jaimin Hemendra Shah (Pro Hac Vice)<br>Taft Stettinius & Hollister LLP<br>111 E. Upper Wacker<br>Chicago, IL 60601<br>Telephone: (312) 836-4171<br>jshah@taftlaw.com<br><br>Richard E. Gaum (Pro Hac Vice)<br>Taft Stettinius & Hollister LLP<br>200 Public Square, Suite 3500<br>Cleveland, OH 44114<br>Telephone: (216) 241-2838<br>Facsimile: (216) 241-3707<br>egaum@taftlaw.com | Mark D. Siegmund - State Bar No. 24117055<br>Craig D. Cherry - State Bar No. 24012419<br>Justin Allen - State Bar No. 24081977<br>STECKLER WAYNE COCHRAN<br>CHERRY, PLLC<br>8416 Old McGregor Road<br>Waco, Texas 76712<br>Telephone: (254) 651-3690<br>Facsimile: (254) 651-3689<br>mark@swclaw.com<br>craig@swclaw.com<br>justin@swclaw.com |

*/s/ Thomas W. Cunningham*

16