**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **ALSI HOLDINGS, LLC.,** | C.A. No.  6:21-cv-01187-ADA |
| *Plaintiff,* | |
| **v.** | PATENT CASE |
| **CURRENT LIGHTING SOLUTIONS, LLC, d/b/a GE CURRENT, A DAINTREE COMPANY, and** | **JURY TRIAL DEMANDED** |
| **HLI SOLUTIONS, INC., f/k/a HUBBELL LIGHTING, INC., both d/b/a HUBBELL CONTROL SOLUTIONS and/or CURRENT,** | ▅▅▅▅▅▅▅ |
| *Defendants.* | |

# DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE REFLECTOR PATENTS

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     UNDISPUTED FACTS ......................................................................................... 1

        A.      The Reflector Patents Required Structure to Create a Uniform Beam ................... 1

        B.      The Accused Evolve Products ................................................................................ 2

                1.      Structure of Accused Evolve Products ....................................................... 2

                2.      The Accused Evolve Products Intentionally Create a Non-Uniform
                        Beam ........................................................................................................... 4

III.    ARGUMENT ........................................................................................................ 6

        A.      Current Lighting Does Not Infringe Numerous Claims of the Reflector
                Patents Because the Accused Products Do Not Have Reflectors with
                Multi-Faceted Side Walls that Cause Light to Be Formed into a "Uniform
                Beam." .................................................................................................................... 6

        B.      Current Lighting Does Not Infringe Numerous Claims of the Reflector
                Patents Because the Accused Products Have No "Edge" of a "Side Wall"
                that Extends Along the Entire Length of the Lighting Strip ................................ 10

        C.      Current Lighting Does Not Infringe the '881 Patent as a Matter of Law ............. 11

                1.      The Accused Products Do Not Have Each Side Wall Extending
                        Away from a Bottom Portion of the Light Emitting Portion of Each
                        of the LEDs ............................................................................................... 11

                2.      The Accused Products Do Not Have a Base Member that Extends
                        the Entire Length of the Lighting Strip ..................................................... 13

IV.     CONCLUSION AND REQUEST FOR RELIEF ............................................... 14

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
| --- | --- |
| 1 | U.S. Patent No. 9,699,854 |
| 2 | U.S. Patent No. 8,322,881 |
| 3 | Deposition Transcript of Dr. Kevin Houser |
| 4 | Rebuttal Report of Dr. Kevin Houser |
| 5 | Opening Report of Dr. Eric Bretschneider |
| 6 | Rebuttal Report of Dr. Michael Krames |
| 7 | Still shots of CUPO086425, SolidWork file, annotated |
| 8 | Still shots of CUPO064774, SolidWork file |

## I.    INTRODUCTION

Defendants Current Lighting Solutions, LLC, ("Current Lighting") and HLI Solutions, Inc. move for summary judgment of non-infringement of two patents—U.S. Patent Nos. and 8,322,881 ("the '881 Patent") and 9,699,854 ("the '854 Patent") (collectively, the "Reflector Patents")—directed to LED lighting arrangements with structures that amplify and form the emitted LED light into a "uniform beam."  Plaintiff, ALSI Holdings, LLC ("ALSI") has no evidence that Current Lighting's accused Evolve roadway products ("Accused Products") emit a uniform beam or include these claimed structures.  On the contrary, the Accused Products are intentionally designed to emit a non-uniform beam and therefore lack structures for creating a uniform beam.  Summary judgment of non-infringement is warranted.

## II.    UNDISPUTED FACTS

### A.    The Reflector Patents Required Structure to Create a Uniform Beam

The "lighting arrangements" of the Reflector Patents, which share a common specification, include an LED lighting strip and a multi-faceted reflector that is mounted to and extends away from the lighting strip. (Ex. 1, '854 Patent at 5:50-54, 6:15-23; Ex. 2,'881 Patent at 5:41-45.) Important to this motion, the claimed "lighting arrangements" of the Reflector Patents cause the light emitted from the LEDs to be "amplified and formed into a uniform beam." (*Id*. at 3:8-14; 20:50-54.)  A "uniform beam" is light "emanating from a source" with a "constant, or nearly constant luminous intensity." (Ex. 3, Houser Tr. at 69:9-15; Ex. 4, Rebuttal Report of Dr. Kevin Houser ("Houser Rebuttal") at ¶ 232.)

The claimed "lighting arrangements" achieve this "uniform beam" using LEDs (shown below in yellow) arranged *along* a lighting strip (pink), and a multi-faceted reflector. (Ex. 1, 20:29-35; Fig. 11a.)  The reflector is made from metal bent to form a base member (in aqua with

1

cut-outs for the LEDs) and two multi-faceted side walls (green in lower figure) such that each extends from the bottom portion of the LEDs (yellow) and has a lower edge adjacent the lighting strip (pink) along its entire length. (*See* Exs. 1 and 2, Figs 11a and 16 below.)



FIG.11A

FIG.16

## B.    The Accused Evolve Products

ALSI accuses Current Lighting's Evolve LED Roadway Lighting Cobra Head ERLC, ERLH, ERL1, ERL2, E2SC products and the Evolve Roadway High Mast ERHM Gen 2 and ERHM Gen 3 products of infringement of the Reflector Patents. (Ex. 5, Expert Report of Dr. Eric Bretschneider ("Bretschneider Opening") at ¶¶ 279, 328.)

### 1.    Structure of Accused Evolve Products

The lighting arrangements of the accused Evolve products are intentionally designed to create a ***non-uniform beam***.  As shown below, the LEDs are not arranged along an LED strip, but are bunched into groups at the end of each lighting strip.



(Ex. 6, Rebuttal Report of Dr. Michael Krames ("Krames Rebuttal") at ¶¶ 386–387.)  In contrast to the claimed reflectors, the Evolve reflectors are ***three-piece structures***, including a center optic and two end cap reflectors that extend around and partially over the LED clusters.  Because the LEDs are clustered, alleged base member (aqua) of the center optic need not and does not extend the entire length of the lighting strip (pink).  Instead, the center optic includes a cut-out (for electronics) between two base sections, such that neither the alleged base member, nor the bottom edges of the sidewalls, extend over the entire length of the lighting strip.



(Ex. 6, Krames Rebuttal at ¶¶ 337–347, 354–365.)

3

Moreover, and also unlike the claimed reflectors, the Evolve products have a thick spacer lifting the reflector side walls above the lighting strip. (*Id.* at ¶¶ 366–77.)  As a result, the reflector side walls sit well above the entire LED and thus do not extend away from the ***bottom portion*** of the light-emitting portion of the LEDs. (*see* below.)



### 2.    The Accused Evolve Products Intentionally Create a Non-Uniform Beam

The Illuminating Engineering Society (IES) specifies several types of lighting distribution patterns, shown below, for use in various roadway applications based on various needs of the particular application. (Ex. 6, Krames Rebuttal at ¶177; *see also* Ex. 4, Houser at ¶¶ 198–206.)



The Accused Products were designed to achieve these lighting patterns.  However, to meet them "requires non-uniform beams, with luminous intensity and zonal lumens intentionally shaped and directed into defined optical zones." (Ex. 4, Houser Rebuttal at ¶ 213.)

4

Current Lighting's expert, Dr. Kevin Houser, compared the beams generated by the luminaires of the Reflector Patents to the beams generated by the Accused Products to demonstrate the clear non-uniformity of the beams of the Accused Products. (*Id.* at ¶¶ 216–235.) Using data metrics from the Reflector Patents, Dr. Houser created a photometric web,[1] shown below, to visually represent the uniform beam emitted by the claimed LED lighting arrangements in the Reflector Patents.  (*Id.* at ¶¶ 227–232.)



(a) Perspective.    (c) Side elevation.

(b) Top view.    (d) Front elevation.

As shown, "there is little variation in color because the beam is uniform, and colorization differences are representations of non-uniformity." (Ex. 4, Houser Rebuttal at ¶¶ 230–232.)

Dr. Houser then used actual IES photometry data files for the Accused Products to generate photometric webs to visualize the beams generated by the Accused Products, for comparison with the uniform beam of the Reflector Patents.  (*Id.* at 216–227.)  The photometric web for an ERLC with a C5 optic is shown below:

---

[1] Photometric webs and reports are commonly used by persons of skill in the art ("POSA") to evaluate beam uniformity of a luminaire or other light. (Ex. 4, Houser Rebuttal. at ¶¶ 220–225.)



(a) Perspective.                    (c) Side elevation.

(*Id*. at ¶¶ 226–227.)  Dr. Houser, after reviewing all the photometric data, concluded: "[b]ased on this data, I independently conclude that the accused products do not generate a uniform beam, nor otherwise meet these claim limitations. On the contrary, the IES format photometry files, Spec Sheets, and Current Lighting patent show that Current Lighting is intentionally creating non-uniform beams." (*Id*. at ¶ 193.)

### III.    ARGUMENT[2]

**A.    Current Lighting Does Not Infringe Numerous Claims of the Reflector Patents Because the Accused Products Do Not Have Reflectors with Multi-Faceted Side Walls that Cause Light to Be Formed into a "Uniform Beam."**

Independent claims 1, 12, and 37 of the '881 Patent, and independent claims 1 and 15 of the '854 Patent, and all their dependent claims, require that the multi-faceted side walls of a reflector cause light produced by the LEDs to be formed into a "uniform beam."  ALSI offers no evidence to create any fact issue on this infringement issue, so summary judgment is warranted.

---

[2] Current Lighting outlined the law of literal infringement in its Motion for Partial Summary Judgment (ECF No. 0163) filed August 1, 2023.  That law also applies here.

As discussed above, a "uniform beam" is light that is "emanating from a source" and has a "constant, or nearly constant luminous intensity." (Ex. 3, Houser Tr., 69:9-15.)  In other words, the luminous intensity of the beam is nearly the same at all angles in which the luminaire emits light.  (Ex. 4, Houser Rebuttal at ¶ 232.)  As sole support for its assertion that the "multi-faceted side walls" of the Accused Products cause light to be "formed into a uniform beam," ALSI offers the following paragraph and accompanying graphic from a Current Lighting brochure:

> 345.    The image below is from the Defendants' marketing materials for the Evolve Outdoor fixtures. [See CUPO075871] A POSA understands that "carefully puts light where it is needed and minimizes direct view of the light source" in conjunction with "recesses the LED array within the optic (or reflector) to limit visibility of the LEDs from the ground level, minimizing glare." are in fact descriptions of the effect of amplifying the intensity of light from the LEDs and forming the light into a uniform beam.



(Ex. 5, Bretschneider Opening at ¶ 294.)

First, Dr. Bretschneider in no way explains how directing light where it is needed and reducing glare proves the *multi-faceted reflectors* of the Accused Products form a "uniform beam." (*See generally id.*) Indeed, the phrase "put[ting] light where it is needed" describes the *non-uniform* nature of the Evolve beams—in other words, the beam is more intense where light is needed and less intense in other parts of the beam—*i.e.*, non-uniform.

Second, Dr. Bretschneider nowhere explains how reducing glare means that a light has a uniform beam. It does not. As Current Lighting's expert, Dr. Kevin Houser, explained in detail,

7

"glare can be mitigated through the intentional creation of a non-uniform beam distribution." (Ex. 4, Houser Rebuttal at ¶ 243.) Notwithstanding, Dr. Bretschneider nowhere demonstrates how the ***multi-faceted side walls*** of the center optic cause the reduced glare (his proxy for a uniform beam) as required by the claims. (*See, e.g.*, Ex. 1 at 20:50-54; Ex. 2 at 20:12-14.) Nor could he, because it is the ***end caps*** of the Evolve reflectors, not the alleged multi-faceted side walls of the center optic, that "recesses the LED array within the optic (or reflector) to limit visibility of the LEDs from the ground level, ***minimizing glare***." (Ex. 6, Krames Rebuttal at ¶¶ 319–322.) As Current Lighting expert Dr. Michael Krames testified, if the end caps were removed from the Accused Products, the products would not operate correctly, would leave large gaps in the light distribution on the roadway, and would cause ***unwanted glare***. (*Id*. at ¶¶ 332–336.) Shown below is a lighting arrangement from an accused Evolve product intact (left) and with the end caps removed (right), which demonstrates that the ***end caps***, not the alleged "multi-faceted reflectors," limit visibility from the ground.



Although ALSI was given all the optical data for the Accused Products during discovery, Dr. Bretschneider did not rely on this data. Instead, his opinion is based on his own interpretation

of a marketing document.  He did so because the optical data unequivocally establishes that the Evolve products produce non-uniform beams and thus do not infringe the asserted claims requiring this limitation. (Ex. 4, Houser Rebuttal at ¶¶ 226–235.)

Dr. Houser compared the uniform beams generated by the Reflector Patents' luminaires to the beams generated by the Accused Products to demonstrate the clear non-uniformity of the beams of the Accused Products.  (*Id*. at 227–235.)



Accused Non-Uniform Beam     Uniform Beam of Reflector Patents

As Dr. Houser opined, and as shown, the "[s]hape and color both illustrate the distinct non-uniformity of the light radiating from [the Accused Evolve Product]." (Ex. 4, Houser Rebuttal at ¶ 226.) He further explained:

In particular, the luminous intensity is much weaker directly below the luminaire and much stronger along the roadway at relatively higher angles; this optical shaping enables wider pole spacings while lessening "hot spots" directly below the luminaire. The luminous intensity is much stronger in the forward (street side) direction, and weaker in the backward (house side) direction. The beam is highly non-uniform, exhibiting intentional optical shaping for the end-use application.

(*Id*.)  Dr. Houser concluded from his analysis that the Accused Products "produce[] a distinctly non-uniform beam." (*Id*. at ¶ 235.)  Because ALSI failed to prove this limitation is met, summary judgment of non-infringement of claims 1, 3–6, 8–12, 15–18, 20–25, 29, and 37 of the '881 Patent, and claims 1–5, 7–10, 12–15, and 18–19 of the '854 Patent is warranted.

**B.      Current Lighting Does Not Infringe Numerous Claims of the Reflector Patents Because the Accused Products Have No "Edge" of a "Side Wall" that Extends Along the Entire Length of the Lighting Strip**

Independent claim 1 of the '854 Patent, and its dependent claims, all require as follows:

- "***a first multi-faceted side wall*** of the at least one reflector sheet extending along the lighting arrangement along an entire length of the lighting strip ***with a first edge adjacent a first side of the lighting strip and extending at an angle along an entire length of the lighting strip***

Independent claims 1, 12, and 37 of the '881 Patent, and its dependent claims, require:

- "the reflector is mounted to each of the lighting strips such that ***a bottom edge of each side wall extends along the entire length of the lighting strip***,

Independent claim 30 of the '881 Patent, and its dependent claims, similarly require:

- ***a bottom edge of each side wall extends along the entire length of the lighting strip***

ALSI has not and cannot meet its burden to demonstrate the Accused Products meet these limitations.  ALSI's expert relies solely on the following to demonstrate that the bottom edge of each side wall extends the entire length of the lighting strip.



(*See* Ex. 5, Bretschneider Opening at ¶ 318.)  As shown above, Dr. Bretschneider ignores a substantial gap (outlined in yellow below right) in the alleged side wall edge, where the side wall edge reaches an electronics compartment. Indeed, as shown below the actual side wall edge in red, the edge adjacent the lighting strip ends at the central opening.



As such, the Accused Products do not infringe independent claims 1, 12, and 37 of the '881 Patent, independent claim 1 of the '854 Patent, nor any of their asserted dependent claims.

## C.    Current Lighting Does Not Infringe the '881 Patent as a Matter of Law

### 1.    The Accused Products Do Not Have Each Side Wall Extending Away from a Bottom Portion of the Light Emitting Portion of Each of the LEDs

All the claims of the '881 Patent require that "each side wall extends away from a ***bottom portion*** of the light emitting portion of each of the LEDs." (*See*, *e.g.*, Ex. 2, '881 Patent at 17:7-17 (emphasis added); Fig. 16.)

ALSI has not and cannot meet its burden to establish that the Accused Products meet this limitation. Dr. Bretschneider merely states: "it is evident that the Evolve ERLC fixtures practice this limitation" and attaches an eDrawing of an ERLC optic. (Ex. 5, Bretschneider Opening at ¶ 293.) However, nothing in this eDrawing shows the limitation is met.



Dr. Bretschneider ignores this limitation because it is not met. Current Lighting uses a thick insulator (in green below) between the lighting strip and the alleged reflector base member, and the entire LEDs sit below the top of this insulator. (Ex. 6, Krames Rebuttal at ¶¶ 367–369.) Thus, the side wall *cannot* extend away from a *bottom portion* of the light emitting portion of each of the LEDs. Instead, the reflector side wall sits *above* the *top portion* of the LEDs.



(Ex. 7, Still shots of CUPO086425, SolidWork file, annotated.) Because the *bottom portion* sits even lower than the top portion, the reflector clearly extends from above the top portion of the

LED. (*Id.*; Ex. 6, Krames Rebuttal at ¶¶ 367–369.)  Since none of the Accused Products meet this limitation, summary judgment of non-infringement of the '881 Patent is warranted. (*Id.*)

### 2.    The Accused Products Do Not Have a Base Member that Extends the Entire Length of the Lighting Strip

Independent claims 1, 12, and 37 of the '881 patent, and their dependent claims, all require as follows:

- "a reflector formed from a substantially planar sheet of material that is bent to form ***a substantially planar base member that extends an entire length of the lighting strip*** and at least a pair of integral multi-faceted side walls that extend from opposite sides of the base member at an angle,

Independent claim 30, and its dependent claims, similarly require:

- "wherein the lighting strip is associated with the reflector such that ***the base member extends an entire length of the lighting strip***,

ALSI again fails to meet its burden to show that the Accused Products meet this limitation.  ALSI's expert relies solely on the following to demonstrate that the base member extends the entire length of the lighting strip.



(*See* Ex. 5, Bretschneider Opening at ¶ 318.)  Dr. Bretschneider's dotted red line ignores a substantial gap in the alleged base member which clearly prevents it from extending the "entire

13

length of the lighting strip." Shown below is a center optic for two of the Accused Products: the ERLx B5 and the ERLC A4.



**ERLx – Reflector for "B5" distribution**



**ERLC – Reflector for "A5" distribution**

(Ex. 6, Krames Rebuttal at ¶¶ 340–341.)  This substantial gap in the base member is for a housing which contains the electrical connectors. (*Id*. at ¶ 342.)  All optical assemblies of the Accused Products contain this gap.  (*Id*.)  As such, none of the Accused Products infringe the '881 Patent.

## IV.    CONCLUSION AND REQUEST FOR RELIEF

Based on the foregoing, Defendants respectfully request that this Court grant summary judgment of non-infringement of the Reflector Patents.

DATED:  August 8, 2023

Respectfully submitted,

By: */s/ Thomas W. Cunningham*
Frank A. Angileri (MI-P45611)
Thomas W. Cunningham (MI-P57899)
John P. Rondini (MI-P72254)
Reza Roghani Esfahani (MI-P83787)
BROOKS KUSHMAN P.C.

1000 Town Center, 22nd Floor
Southfield, MI 48075
(248) 358-4400/ F: (248) 358-3351
fangileri@brookskushman.com
tcunningham@brookskushman.com
jrondini@brookskushman.com
resfahani@brookskushman.com

Jennifer Parker Ainsworth
WILSON, ROBERTSON & CORNELIUS, P.C.
908 ESE Loop 323, Suite 400
Tyler, TX 75701
jainsworth@wilsonlawfirm.com

*Attorneys for Defendants*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically UNDER SEAL and immediately served via electronic service by e-mail on August 8, 2023, to all counsel of record.

*/s/ Thomas W. Cunningham*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to LR CV-5(a)(7)(A), I certify that the foregoing document is authorized to be filed under seal pursuant to authorization already granted by the Court in a Protective Order (Dkt. No. 75).

*/s/ Thomas W. Cunningham*

16